PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THOMAS ALEXANDER PIERCE, | ) |
| | ) CASE NO. 4:13CV1956 |
| Plaintiff, | ) |
| | ) |
| v. | ) JUDGE BENITA Y. PEARSON |
| | ) |
| WAYNE DIETZ, *et al.*, | ) |
| | ) **MEMORANDUM OF OPINION** |
| Defendants. | ) **AND ORDER** |

*Pro se* Plaintiff Thomas Alexander Pierce filed this *Bivens*[1] action against Lieutenant Wayne Dietz and another unnamed corrections officer. Pierce is a federal prisoner incarcerated at the Federal Correctional Institution in Elkton, Ohio (FCI Elkton). In the Complaint (ECF No. 1), Pierce alleges Defendants selectively enforced prison regulations on the basis of his race, resulting in disciplinary action against him. He seeks monetary relief. For the reasons that follow, the Court dismisses this action pursuant to 28 U.S.C. § 1915A.

## I. Background

The Complaint (ECF No. 1) alleges that shortly after midnight on March 14, 2012, Corrections Officer M.W. Mason selected Pierce for urine testing. Mason informed Pierce that he had two hours to provide the prison staff with a urine sample or else he would be placed in the Special Housing Unit ("SHU"). Pierce states he could not produce a urine sample at that time

---

[1] *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971) provides federal inmates and detainees with a cause of action analogous to 42 U.S.C. § 1983.

(4:13CV1956)

due to the dehydrating effects of his medication for high blood pressure. As a result, he was placed in the SHU and issued an incident report, charging him with refusing to provide a urine sample or to take part in other drug-abuse testing.

Once in the SHU, Lieutenant Harris granted a request by Pierce for more time to produce a sample. Several hours later, after the end of Lieutenant Harris's work shift, Pierce renewed his request for additional time, this time asking Corrections Officer Ortiz, who also purportedly told Pierce he could have a "second chance" to complete the urine testing. Pierce alleges that both Harris and Ortiz lied to him and, in fact, he was not granted any additional time.

Subsequently, on March 14, 2012, Lieutenant Georgeoff delivered to Pierce a copy of the previously issued incident report. On March 19, 2012, the Unit Disciplinary Committee referred the charge against Pierce to the Disciplinary Hearing Officer ("DHO") for a hearing.

While Pierce was awaiting a hearing, he learned that two other inmates, Michael Giacoma and Terry Treater, both of whom are white, had also been placed in the SHU during the period he was in the SHU for the same reason, *i.e.*, failing to produce a urine sample for drug testing. According to the Complaint (ECF No. 1), Dietz and an unidentified Corrections Officer, John Doe, offered Giacoma and Treater a second opportunity to produce a sample. Pierce alleges that neither Dietz nor John Doe, who are purportedly white, offered him a second chance to comply. He further alleges that the charges against Giacoma and Treater were dropped and that they were released back into the general inmate population.

On April 25, 2012, the DHO held a hearing, found Pierce guilty of the charged conduct violation, and sanctioned him to 180 days administrative segregation, forfeiture of 27 days of

2

(4:13CV1956)

good-time credits, and a $200 fine.  Pierce did not file an administrative appeal to the Regional Office from the DHO's decision.[2]  ECF No. 1-3 at PageID #: 11.

On the basis of the foregoing factual allegations, Pierce claims Defendants' conduct was racially discriminatory in violation of "the Equal Protection Clause of the Fifth Amendment." ECF No. 1 at PageID #:4.  He seeks $1.5 million in damages.

---

[2] On December 6, 2012, Pierce did, however, file an informal administrative complaint against Dietz, claiming he had violated prison regulations prohibiting discrimination towards inmates.  ECF No. 1-1.  The staff response to Pierce's complaint stated the urinalysis program permits either a captain or lieutenant to extend the allowable time to comply beyond the prescribed two-hour period for specific reasons, including medical necessity, psychological problems, or dehydration.  Pierce filed an administrative appeal on January 5, 2013, again alleging Dietz had engaged in racial discrimination. ECF No. 1-2 at PageID #:7-8.  The Warden denied the appeal, noting that Pierce had been advised that Dietz was not on-duty at the time Pierce, Giacoma and Treater were placed in the SHU for failing to produce urine samples.  Id. at PageID #: 9.  Furthermore, the Warden noted that only a SHU captain, and not a lieutenant, may determine whether an inmate may be released from the SHU after the completion of an investigation.  Id. Pierce appealed to the Regional Director, arguing that the Warden had deliberately failed to investigate his discrimination claim and seeking release of the identity of the SHU Lieutenant on duty during the relevant time period.  ECF No. 1-3.  The Regional Director responded on April 11, 2013, denying the appeal on the grounds that Pierce failed to raise his discrimination claims during his disciplinary hearing or on appeal therefrom and advised Pierce if he wished to identify the Lieutenant on duty he could submit a Freedom of Information Act request to the Office of the General Counsel.  Id. at PageID #: 11. There is no indication in the record or the Complaint (ECF No. 1) that Pierce filed such a request.  Pierce appealed to the General Counsel, claiming the Warden had concealed the name of the on-duty Lieutenant who had discriminated against him.  ECF No. 1-4 at PageID #: 12.  A print-out from the electronic docket of Pierce's administrative appeal is attached to the Complaint (ECF No. 1) and indicates that the General Counsel's response to the appeal was due July 19, 2013.  Id. at PageID #: 13. However, no response appears in the record.

3

(4:13CV1956)

## II.  Standard for Dismissal

Although *pro se* pleadings are liberally construed, Boag v. MacDougall, 454 U.S. 364, 365 (1982) (per curiam); Haines v. Kerner, 404 U.S. 519, 520 (1972), a district court is expressly authorized to dismiss any civil action filed by a prisoner seeking relief from a governmental entity, as soon as possible after docketing, if the court concludes that the complaint fails to state a claim upon which relief may be granted, or if the plaintiff seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A; Siller v. Dean, No. 99-5323, 2000 WL 145167, at *2 (6th Cir. Feb.1, 2000); *see* Hagans v. Lavine, 415 U.S. 528, 536-37 (1974) (citing numerous Supreme Court cases for the proposition that attenuated or unsubstantial claims divest the district court of jurisdiction); In re Bendectin Litig., 857 F.2d 290, 300 (6th Cir. 1988) (recognizing that federal question jurisdiction is divested by unsubstantial claims).

When determining whether a plaintiff has stated a claim upon which relief can be granted, the Court must construe the complaint in the light most favorable to the plaintiff, accept all factual allegations as true, and determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The plaintiff's obligation to provide the grounds for relief "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id*. at 555.  Although a complaint need not contain detailed factual allegations, its "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." *Id.*  (citation omitted).  The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S.

4

(4:13CV1956)

265, 286 (1986). The Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), further explains the "plausibility" requirement, stating that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Furthermore, "[t]he plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). This determination is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679.

### III. Law and Analysis

Plaintiff's individual capacity claims against Defendant Dietz arise under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). In *Bivens*, the Supreme Court created a private right of action for damages against federal officers who are alleged to have violated a citizen's constitutional rights. *Id.* at 388. *See also Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001). Under *Bivens*, Plaintiff must plead and prove two essential elements. First, he must show that he has been deprived of rights secured by the Constitution or the laws of the United States. Second, he must demonstrate that Defendant acted under color of federal law. *Bivens*, 403 U.S. at 397. *Bivens* requires a showing that the named defendant performed the acts that resulted in the deprivation of a constitutional right. *See Rizzo v. Goode*, 423 U.S. 362, 375-76 (1976); *Bivens*, 403 U.S. at 390 n. 2.

Plaintiff, who is black, contends that he was issued a conduct violation on the basis of his race. The Complaint alleges Defendants Dietz and Doe, who are white, engaged in racial

(4:13CV1956)

discrimination under "the Equal Protection Clause of the Fifth Amendment" when they offered inmates Giacoma and Treater, who are also white, a second chance to avoid discipline and to complete the urine testing process while such an opportunity was not offered to Pierce. ECF No. 1 at PageID #: 3-4. Pierce further asserts the charges against Giacoma and Treater were dropped, but that he was found guilty of the charged conduct and was sanctioned.

As Plaintiff is challenging the action of an official acting under color of federal law, rather than state actors, this Court's equal-protection analysis must proceed under the Fifth Amendment. The Fifth Amendment does not itself contain a guarantee of equal protection but instead incorporates, as against the federal government, the Equal Protection Clause of the Fourteenth Amendment. *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011). As the Sixth Circuit recently noted, "[w]e evaluate equal protection claims against the federal government under the Fifth Amendment just as we would evaluate equal protection claims against state and local governments under the Fourteenth Amendment." *Id.*

The Equal Protection Clause of the Fourteenth Amendment commands that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. CONST. AMEND. XIV, § 1. "Absent a compelling state interest, racial discrimination in administering a prison violates equal protection principles." *Garcia v. Sanders*, No. Civ.A.04-CV-60-HRW, 2005 WL 2010276, at *8 (E.D. Ky. Aug. 19, 2005) (citations omitted).

To state a claim for selective enforcement of prison disciplinary rules, Plaintiff must satisfy a three-part test. See *Gardenshire v. Schubert*, 205 F.3d 303, 318-19 (6th Cir. 2000). First, he must allege he belongs to an identifiable group, such as race or religion, and that he was

6

(4:13CV1956)

singled out for prosecution when persons not belonging to that group were not prosecuted in similar situations. Second, the official must initiate the prosecution with a discriminatory purpose. Third, the prosecution must have a discriminatory effect on the group to which Plaintiff belongs. *Id.* Discriminatory intent may be established by showing an unequal application of a prison policy or system, but conclusory allegations of racism are insufficient. *Minority Police Officers Ass'n v. South Bend*, 801 F.2d 964, 967 (7th Cir. 1986); *see also Williams v. Halbert*, No. 08-CV-006-KSF, 2008 WL 2397709, at *10 (E.D. Ky. June 11, 2008) ("Claims of racial discrimination must be pled with particularity." (citing *Blackburn v. Fisk Univ.*, 443 F.2d 121 (6th Cir. 1971); *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)).

Here, Pierce does not allege that *these* Defendants treated similarly situated non-black prisoners differently than they treated him, *see Boone v. Spurgess*, 385 F.3d 923, 932 (6th Cir. 2004), or selectively enforced prison disciplinary rules against him. Liability under *Bivens* is personal and is based upon each defendant's own constitutional violations. *Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001). Pierce alleges that Dietz and Doe gave two white prisoners a second chance to produce urine samples after they were placed in the SHU and that the charges against those inmates were dropped. But Pierce does not allege that either Dietz or Doe was involved in the decision to charge Pierce or the other inmates or to release them back into the general inmate population.[3] Furthermore, while Pierce indicates that Officer Ortiz and

---

[3] Indeed, to the contrary, the Warden's response to Pierce's administrative complaint indicates that Dietz was not even on duty when Pierce, Giacoma, and Treater were placed in the SHU for failing to provide urine samples, and that the decision to release an inmate from the SHU can only be made by the SHU captain. ECF No. 1-2 at

(continued...)

(4:13CV1956)

Lieutenant Harris purportedly offered him a second-chance to comply, albeit falsely, he does not allege that either Dietz or Doe participated in that deception.  Nor does he allege that he asked Dietz or Doe for additional time to comply, much less that he had any contact with either Defendant while he was in the SHU.

  Moreover, even if Dietz or Doe were somehow involved in the decision to discipline Pierce, the Complaint (ECF No. 1) contains no more than conclusory allegations of race-based animus.  Discriminatory purpose "implies more than intent as volition or intent as awareness of consequences.  It implies that the decisionmaker . . . selected . . . a particular course of action at least in part 'because of,' not merely 'in spite of' its adverse effects upon an identifiable group." *Personnel Admin. of Mass. v. Feeney*, 442 U.S. 256, 279 (1979) (internal citation omitted); *see also Coyne v. City of Somerville*, 972 F.2d 440, 445 (1st Cir. 1992).  Pierce alleges no supporting facts or details that Defendants' alleged conduct, if it even occurred, was motivated by race.  Pierce's allegation that he was treated differently in the SHU and disciplined because he is black does not by itself establish a motivation to discriminate against him on the basis of his race or ethnicity.  A complaint that contains only conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief.  *See Iqbal*, 556 U.S. at 677-78.

  Accordingly, Plaintiff has not set forth sufficient facts to state a claim against Defendants for selective enforcement of the disciplinary rules under *Bivens*.

---

  [3](...continued)
PageID #: 9.  Pierce did not refute the Warden's contentions in his appeal to the Regional Director.  ECF No. 1-3.

(4:13CV1956)

## IV.  Conclusion

For all of the foregoing reasons, this action is hereby dismissed pursuant to 28 U.S.C. § 1915A.  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.[4]

IT IS SO ORDERED.

 December 4, 2013                    /s/ Benita Y. Pearson
Date                                  Benita Y. Pearson
                                      United States District Judge

---

[4] 28 U.S.C. § 1915(a)(3) provides:

An appeal may not be taken in forma pauperis if the trial court certifies in writing that it is not taken in good faith.

9